# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

SARA ANN M.,

    Plaintiff,

vs.

KILOLO KIJAKAZI, Commissioner of Social Security,

    Defendant.

No. C21-4050-LTS-MAR

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Plaintiff Sara M., (the Claimant) seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance (DI) benefits under 42 U.S.C. §§ 401-34 and Title XVI supplemental security income (SSI) under 42 U.S.C. §§ 1381-85. The Claimant contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period.

## II. BACKGROUND

On November 19, 2015, the Claimant protectively filed an application for DIB, and on April 29, 2016, she filed an application for SSI, both alleging disability due to Charcot Marie Tooth Disease, type 1, and "bad knees." AR 409, 411, 445. She claimed that she became disabled on November 4, 2015. *Id*. at 445. Her applications were denied on initial review and on reconsideration. *Id*. at 347-50, 352-55. On November 13, 2017, the Claimant appeared with her attorney for a hearing before an Administrative Law Judge (ALJ). *Id*. at 269-324. In a decision dated March 8, 2018, the ALJ denied her claims. *Id*. at 247-68. On May 7, 2018, the Claimant appealed the ALJ's decision. *Id*.

at 406-08. On September 6, 2018, the Appeals Council denied her appeal. *Id*. at 1-7, 1220-27. The Claimant submitted medical records from December 18, 2015, to January 24, 2018, which the Appeals Council found to be irrelevant and therefore did not exhibit. *Id*. at 2. The Claimant then sought judicial review in this court. On February 28, 2020, I remanded her case to the Commissioner for further proceedings.[1] *Id*. at 1228-53.

On June 3, 2020, the Appeals Council issued an order remanding the case pursuant to my order. *Id*. at 1160-62. In its remand order, the Appeals Council acknowledged that the Claimant had filed a subsequent claim and had been found disabled as of March 9, 2018, the day after the first ALJ decision was issued. *Id*. at 1162. The Appeals Council affirmed the award of benefits based upon the subsequent filing and directed that the ALJ consider the period from November 4, 2015, through March 9, 2018. *Id*.

On August 3, 2020, the ALJ conducted a second hearing. *Id*. at 1163-97. On August 20, 2020, the ALJ issued a decision denying the Claimant's applications for the relevant time period. *Id*. at 1137-59. The Claimant sought review by the Appeals Council, which denied the appeal on October 4, 2021. *Id*. at 1133-36. The Claimant then filed this action for judicial review. The case is fully submitted and ready for decision.

### III. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

---

[1] *See Sara M. v. Commissioner*, No. C18-4085-LTS. Specifically, I determined "that the ALJ's decision to give less than controlling weight to Dr. Thaisetthawatkul's most recent opinion regarding [Claimant's] handling and fingering abilities is not supported by substantial evidence in the record as a whole." AR 1251. I instructed the ALJ to reconsider the record, including additional evidence submitted to the Appeals Council regarding Claimant's January 2018 visit to a neuromuscular clinic, and to reevaluate Claimant's treating physician's January 2018 opinion and Claimant's credibility regarding her handling and fingering in light of that evidence. *Id*.

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. § 404.1572(a).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use

3

of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of the claimant's past relevant work. If the claimant cannot do past relevant work, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work the claimant has done within the past 15 years of the claimant's application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 404.1560(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 404.1545(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* § 404.145(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education and work experience. *Id.* §§ 404.1512(f), 404.1520(a)(4)(v). The Commissioner must show not

4

only that the claimant's RFC will allow for adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. *Id.* At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* § 404.145(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### IV.   THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since November 4, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.917 *et seq.*).

3. The claimant has the following severe impairments: knee degenerative joint disease; degenerative disc disease of the cervical spine; Charcot Marie Tooth syndrome with chronic demyelinating neuropathy; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is able to stoop, kneel, crouch, and crawl occasionally; is able to handle and grip with enough force and strength to lift and carry objects weighing up to 10 pounds occasionally and lighter objects frequently; is able to handle and finger frequently; is able to reach overhead occasionally; is able to

> perform work that does not require climbing ladders; exposure to hazards such as work at unprotected height; exposure to sustained and concentrated vibration; concentrated extreme temperatures; and does not require the operation of foot controls.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on November 22, 1982, and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from November 4, 2015, through March 8, 2018 (20 CFR 404.1520(g) and 416.920(g)).

AR 1140-59.

## V. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's final determination not to award disability insurance benefits is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3). District courts have the power to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner. . . with or without remanding the cause for a rehearing." *Id*. The Commissioner's factual findings are conclusive "if supported by substantial evidence."

*Id.*; see *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (the Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole.").

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of

benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## *VI. DISCUSSION*

The Claimant argues the ALJ made the following errors:

1. The ALJ ignored my directions in the previous remand order and again erred in giving little weight to Dr. Thaisetthawatkul's opinion regarding her ability to handle and finger.

2. Because the ALJ gave incorrect weight to that opinion, the hypothetical question the ALJ posed to the Vocational Expert (VE) is defective and not substantial evidence.

*See* Doc. 14. The Claimant requests reversal and an award of benefits for the time period from November 4, 2015, to March 9, 2018, or, in the alternative, remand back to the ALJ for a third hearing. *Id.*

### *A. The Claimant's Subjective Complaints and Her Treating Physician's Opinion*

At Step Five, the ALJ determined the Claimant retained the RFC to perform sedentary work with the following applicable limitations: "the claimant is able to stoop, kneel, crouch, and crawl occasionally; is able to handle and grip with enough force and strength to lift and carry objects weighing up to 10 pounds occasionally and lighter objects frequently; is able to handle and finger frequently." AR 1144. The ALJ considered the Claimant's subjective complaints, noting "the inability to engage in fine manipulation,

hold objects, spend long periods of time on her feet, and walk without fear of falling are all limitations that the claimant alleges have continued." *Id.* at 1145. The ALJ concluded that, while her medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

In this second decision, the ALJ essentially repeated a paragraph from his first decision regarding the impairments in Claimant's hands. *Compare id.* at 1146, *with id.* at 1208. This analysis states:

> Regarding the claimant's hands, the medical evidence demonstrated the claimant's testimony and allegations overstated her degree of limitation. She testified she lacked the strength, sensation, and dexterity in her hands to use a keyboard or hold even light objects, such as eyeglasses. However, the record contained no significant clinical findings of loss of sensation in her hands, limited range of motion in her fingers, joint stiffness, or lack of coordination. Her hands and fingers were normal to inspection. (Exh. 26F/7, 16; 23F/4). She had normal range of motion through the shoulders, upper arms, elbows, wrists, and hands. (Exh. 17F/9). Although she demonstrated some intrinsic wasting and decreased grip strength in her hands due to CMT, the resulting deficit was not so significant that it would preclude picking up objects weighing 10 pounds or less. (Exh. 17F/9; 6F; 10F; 22F/5, 8, 10; 19F/5). Further, the strength in her arms was normal, and she was able to complete extensive physical therapy without exhibiting significant problems with her hands. (Exh. 18F; 21F; 23F; 24F).

*Id.* at 1146. The ALJ also re-reviewed Claimant's treating physician's opinions from the University of Nebraska Medical Center (UNMC). *Compare id.* at 1149-51, *with id.* at 1210-11. He completed a facially more thorough review of Dr. Thaisetthawatkul's opinions in his second decision. AR 1149-51. However, the ALJ also largely repeated analysis from his first decision, in which he wrote:

> Dr. Thaisetthawatkul has provided several statements about the claimant's functional abilities (9F; 25F). Generally speaking, the opinions expressed in these statements are entitled to little weight. Although Dr. Thaisetthawatkul is a treatment provider, he has an appointment with the

9

> claimant only once per year (25F/2). Moreover, his assessment of the claimant's manipulative abilities is internally inconsistent. At one place in his opinion dated July 2016, he stated that the claimant *does not* have "an extreme loss of function in both upper extremities to the extent that the inability to perform fine and gross movements seriously interferes with the ability to independently initiate, sustain, or complete activities" (9F/7). However, elsewhere in that same opinion, Dr. Thaisetthawatkul opined that the claimant is unable to perform fine manipulation with either hand (9F/8).

*Id*. at 1210 (emphasis in original). The second decision states:

> The undersigned found the specific restrictions the doctor assessed did not appear elsewhere in his records, including anything about significant handling and fingering limitations. Considering all these factors, as well as the totality of the medical evidence as described, the opinions expressed in these statements were entitled to little weight. Although Dr. Thaisetthawatkul was a treatment provider, he had an appointment with the claimant only once per year (25F/2).[2] At the time of his evaluation in January 2018, he had not seen her for treatment in over a year. He did not perform significant testing or physical examination of the claimant at the time of his opinion. Moreover, his assessment of the claimant's manipulative abilities was internally inconsistent. At once place in his opinion dated July 2016, he stated that the claimant did not have "an extreme loss of function in both upper extremities to the extent that the inability to perform fine and gross movements seriously interferes with the ability to independently initiate, sustain, or complete activities" (9F/7).

---

[2] In my previous decision, I found the fact that Dr. Thaisetthawatkul saw the Claimant only once per year "is not a good reason" for giving his opinions little weight because:

> this is the frequency Dr. Thaisetthawatkul has determined he needs to see [Claimant]. Given the nature of [Claimant's] condition (an incurable genetic condition that progresses slowly), this appears reasonable. At minimum, this reason amounts to unfounded second-guessing by the ALJ of a highly-specialized treating source's decision as to how often the patient should be seen. This is not a situation in which the frequency of [Claimant's] visits to her doctor is indicative of the severity or credibility of her symptoms, compared to, for instance, claimants with chronic pain or certain psychological impairments. This factor weighs against the ALJ's decision to give Dr. Thaisetthawatkul's opinion lesser weight.

*Id*. at 1247-48. The ALJ's repeated reliance on the frequency of Claimant's visits as a reason to give little weight to Dr. Thaisetthawatkul's directly contradicts my prior finding.

> However, elsewhere in that same opinion, Dr. Thaisetthawatkul opined that the claimant was unable to perform fine manipulation with either hand (9F/8).

*Id.* at 1149-50 (footnote added). The ALJ then repeats two paragraphs from his original decision. *Compare id.* at 1150, *with id.* at 1210.

The ALJ ends his analysis of Dr. Thaisetthawatkul's opinions with a specific discussion of the Claimant's RFC, including her ability to handle and finger frequently:

> [P]ertaining to the issue of handling and fingering, the undersigned did not find significant evidence in support of greater limitations. As discussed above, the claimant's hands and fingers were normal to inspection. (Exh. 26F/7, 16 (1413-45); 23F/4 (1069-87)). Although she demonstrated some intrinsic wasting and decreased grip strength in her hands due to CMT, the resulting deficit was not so significant that it would preclude picking up objects weighing 10 pounds or less. (Exh. 17F/9 (907-21); 6F (pg. 649-64); 10F (pg. 728-42); 22F/5, 8, 10 (1048-68); 19F/5 (953-60)). She had normal range of motion through the shoulders, upper arms, elbows, wrists, and hands. (Exh. 17F/9 (907-21)). She was able to perform a variety of activities that would have required use of the hands, such as driving, taking care of pets, doing laundry, and washing dishes. Finally, the strength in her arms was normal, and she was able to complete extensive physical therapy without exhibiting significant problems with her hands. (Exh. 18F (922-52); 21F (991-1047); 23F (1069-87); 24F (1088-1117)). Overall, the evidence supported finding that the claimant had the strength and dexterity in her hands to perform sedentary work.
>
> The undersigned has relied predominantly upon the objective medical findings throughout the record to support the residual functional capacity set out above. While generally a treating doctor and specialists are given more reverence in their opinions, in this case, the opinions of . . . Dr. Thaisetthawatkul were not persuasive. As discussed above, they were not fully supported by their own narrations or examination findings. Further, they were inconsistent with the record as a whole, which showed some limitations that would reasonably limit the claimant to sedentary work but were not so limiting as to preclude sedentary work at the functional capacity described above. Finally, and as specifically mentioned in the remand, the new evidence obtained in the final record did not demonstrate any significant limitations with handling and fingering prior to the established

11

> onset date. Most of the voluminous record pertained to the claimant's walking and knees, not her hands.
>
> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the preponderance of the evidence.

*Id.* at 1150-51. Based on my prior decision,[3] the cited exhibits do not support the ALJ's findings, as they instead show the weakening of Claimant's hands. Nor did the ALJ reference the January 2018 treatment notes from Dr. Thaisetthawatkul and the physical therapist who evaluated Claimant the same day.

Reviewing the applicable exhibits the ALJ cited, I again find little to no support for his conclusion. Exhibit 6F (AR 649-64), a note from Dr. Thaisetthawatkul from December 18, 2015, states "[s]he also has trouble with fine movement of her hands." *Id.* at 649. The physical therapist who examined Claimant following her visit with Dr. Thaisetthawatkul noted that she:

> presented with active range of motion within function limits in her shoulders, elbows, and wrists. Her hands are limited in their ability to complete a full fist, with weakness noted of the interosseous and lumbrical muscles of the hands. On her right hand, she is unable to adduct the 5th digit toward the 4th digit.

---

[3] I wrote that:

> these are not good reasons for refusing to give full credit to [Claimant's] allegations concerning her difficulties with fine manipulation. The ALJ's reasons primarily address [Claimant's] ability to handle objects but fail to explain why her allegations concerning her inability to perform fine fingering movements are not credible. In addition, the activities cited by the ALJ allegedly demonstrating that she can handle and finger do not support the frequency with which the ALJ concluded she could perform these movements (one-third to two-thirds of an eight-hour workday). Further, the fact that the medical records do not indicate a loss of sensation, limited range of motion in her fingers, joint stiffness or lack of coordination has little to do with her grip and pinch strength and the ability to make fine motion movements with her fingers for a significant portion of the workday. Moreover, the record does reflect limited range of motion in her fingers.

AR 1243-44.

*Id.* at 651-52. The therapist also stated that Claimant "reports difficulty with dressing and she modifies her choice of clothing to include not wearing clothing with buttons, avoiding pants with zippers, etc.," but "reports that she has no problem starting her car." *Id.* at 652. Claimant also "did report that she was having problems getting credit cards from her wallet, zipping her coat." *Id.*

Following this initial 2015 visit to UNMC, Dr. Thaisetthawatkul referred the Claimant to UNMC Orthopedics for her knee pain. During this visit on August 23, 2016, the orthopedic doctor noted Claimant had "[n]ormal range of motion in appearance through the shoulders, upper arms, elbows, wrists, and hands. In her hands, she does demonstrate some intrinsic wasting and has decreased grip strength noted on exam today." *Id.* at 735. This objective examination is from exhibit 10F (AR 728-42), cited by the ALJ. The ALJ also cited exhibit 17F (AR 907-21), which is simply a copy of exhibit 10F.

The ALJ cited several other exhibits that ultimately support Dr. Thaisetthawatkul's opinions regarding Claimant's hands. In a note from December 16, 2016 (exhibit 19F), Dr. Thaisetthawatkul noted that Claimant "has weakness in her fine movement and has trouble buttoning her shirt and grabbing objects by her fingers. However, she holds a cup of coffee OK." *Id.* at 957. The ALJ also cited exhibit 22F, which was partially duplicative of exhibit 19F, including the above note. *Compare id.* at 957, *with id.* 1055. However, exhibit 22F also included Claimant's second Occupational Therapy Assessment at UNMC that occurred on the same day. *Id.* at 1057. One year after her first appointment with UNMC physical therapy, she presented with the problem of "hand weakness." *Id.* The physical therapist noted that Claimant "reports that she is experiencing more difficulty with fine motor activities that require her to maintain her pinch upon a small area, such as zipping, buttoning. She experiences more difficulty when her hands are cold. She reports she is still able to independently tie shoes and cut food." *Id.* Claimant's "grip strength increased slightly, bilaterally. [Claimant] does feel her grip strength does fluctuate. [Claimant] reports she does use a modified approach

13

to cut her food. She has been unable to successfully modify her approach for buttoning small buttons and grasping small zippers and fasteners." *Id*. In further support of this evidence of Claimant's hand atrophy, Dr. Thaisetthawatkul noted in a letter to an insurer asking for a review of the denial of physical therapy, Claimant "also has always had trouble with fine motor movement." *Id*. at 1063-64.

The ALJ found that the 2016 Treating Physician Data Sheet[4] shows inconsistencies and supports a finding that Dr. Thaisetthawatkul's opinion is entitled to little weight. *See id*. at 718-27 (exhibit 9F). Dr. Thaisetthawatkul completed this checklist in 2016, when Claimant showed some muscle weakness in her hands, but it had not progressed so far as to completely preclude all daily living activities. *Compare id*. 649-64, *with id*. 237-38, 240-41. This checklist supports that conclusion, as also evidenced by the grip strength tests completed in 2015 and 2018. Dr. Thaisetthawatkul gave Claimant's right and left grip strengths a score of three out of five in 2016 and gave her foot dorsiflexions zero out of five (*id*. at 722), both of which are supported by Claimant's physical therapy evaluation notes from that same visit. *See id*. at 649-64. Thus, Dr. Thaisetthawatkul correctly indicated that Claimant did not "have an extreme loss of function in both upper extremities, to the extent that the inability to perform fine and gross movements seriously interferes with the ability to independently initiate, sustain, or complete activities," while also noting that Claimant was not able to perform fine manipulations like "picking up coins, buttoning a shirt, and using a cellphone." *Id*. at 724-25. This reflects the objective medical evidence from 2016 as compared to the progressive wasting in Claimant's hands noted in 2018.

The record contains little evidence supporting the ALJ's conclusion that Claimant could "handle and finger frequently." Indeed, the only evidence I have been able to

---

[4] I reviewed this checklist in my prior decision and determined that "the supportability factor weighs in favor of the ALJ's decisions in some aspects but weighs against it in others." *Id*. at 1249.

locate consists of general inspection notes in exhibit 23F from Midwest Pain Clinic regarding routine evaluations of Claimant for the purpose of refilling prescriptions for shoulder and knee pain. *Id*. at 1069-87. Those evaluations understandably focus on her knee and shoulder pain and only briefly noted that "Hands, Finger nails: Extremities: Inspection of digits: extremities intact, symmetric." *Id*. at 1072, 1080.

Confusingly, the ALJ also cited several unrelated medical records as support for his conclusion that Dr. Thaisetthawatkul's opinion regarding Claimant's handling and fingering ability should be afforded little weight. Exhibit 18F contains Siouxland Community Health Center records regarding Claimant's complaints of shoulder and neck pain associated with her progressing CMT. *Id*. at 922-52. Exhibit 21F contains Sioux City Physical Therapy notes regarding Claimant's physical therapy for her ongoing knee pain from April 24, 2017, through May 26, 2017, which again was focused on parts of Claimant's body other than her hands. *Id*. at 991-1047. As noted above, exhibit 22F is simply a more complete copy of exhibit 19F, which supports Dr. Thaisetthawatkul's conclusions.[5] *Id*. at 1048-68.

Next, the ALJ cites exhibit 24F, which contains chiropractic visit notes for neck and back pain. *Id*. at 1088-1117. Finally, the ALJ cites exhibit 26F, which is an exact copy of exhibit 23F and is incorrectly labeled in the appendix as UNMC Office Treatment Records. *Compare id*. at 1069-87 (23F), *with id*. 1413-45 (26F). This mistake in the record was present when the ALJ completed his review because the ALJ's citation to pages 7 and 16 of exhibit 26F corresponds to brief examination notes mentioned above regarding Claimant's hands from Midwest Pain Clinic Office Treatment records. *Compare id*. at 1076, 1080, *with id*. at 1419, 1424.

These are not the UNMC Office Treatment Records that I directed the ALJ to consider in my prior order. *Id*. at 1251-52 ("On remand, the ALJ should consider all of

---

[5] "She has weakness in her fine movement and has trouble buttoning her shirt and grabbing objects by her fingers. However, she holds a cup of coffee OK." *Id*. at 1055.

the medical evidence in the record (including the additional evidence submitted to the Appeals Council regarding [Claimant's] January 2018 visit to the neuromuscular clinic) and reevaluate Dr. Thaisetthawatkul's January 2018 opinion, in addition to [Claimant's] credibility, in light of that evidence."). Because exhibit 26F is incorrectly labeled as being this evidence but it is not, the records that I specifically directed the ALJ to consider on remand are largely absent from the 2020 hearing record. *Id.* at 1153-59. Part of Dr. Thaisetthawatkul's note from January 2018 is present in 25F, the second checklist he completed regarding Claimant's functioning. *Id.* at 1118-32; *see id.* at 1125-27. However, the physical therapy examination and grip strength tests also completed that day are not included. *See id.* at 226-41. To show why this is important to the ALJ's determination regarding Claimant's ability to "handle and finger frequently" during the relevant time period, I will again (*see* AR 1241-42) address the pertinent portions of these medical records, which are at AR 226-41.

In his 2018 checklist, Dr. Thaisetthawatkul found that Claimant could turn and twist objects ten to twenty percent of the time but could perform fine finger manipulations zero percent of the time. AR at 1123. In his 2018 treatment note, he observed that Claimant's "hands seem to get weaker too. She has difficulty holding objects and losing her grip strength. Her fine movement is affected and she has trouble buttoning her shirt." *Id.* at 235. He opined that "[t]he weakness in the hands is also consistent with [CMT]. AR 236. Thus, he sent Claimant "to PT today to help with the weakness." *Id.* He also noted that "I spent 25 minutes with the patient (from 11:00 am to 11:25 am) and more than 50% of the time was spent face to face counseling and/or coordination of care." AR 237. The physical therapy notes from that visit reflect the progression of Claimant's CMT in her hands. *Id.* at 237. The physical therapist wrote that Claimant's "concern focused on the growing number of functional limitations she attributes to hand weakness / weak grip / poor dexterity." *Id.* Claimant described:

> specific difficulties with daily living tasks because she cannot sustain the pressure on a pinch grip and her gross grasp is getting weaker. She avoids

16

clothing with fasteners because she cannot manipulate buttons, snaps, or zippers, especially when her hands are cold. She can still tie her shoe laces as long as they are quite long. She manages regular utensils adequately to self-feed and cut food, but has to be [sic] reports she is still able to independently tie shoes, and cut food. She can manage food preparation, but does not try to lift or carry pans or dishes. [Claimant] is able to access her cell phone independently, but states that it takes her much longer to navigate overall than it used to because of her limited hand strength and decreased thumb mobility/strength.

*Id*. In response to Claimant's subjective complaints, the physical therapist completed two updated grip strength measurements, finding:

> Over two different trials, [Claimant's] gross grip measured 10 lbs or less bilaterally. One year ago (Dec, '16) her right hand grip measured 16 lbs, left hand 20 lbs. Age/gender matched peers have a mean grip strength between 60-70 lbs on the normative data tables. Direct examination of both hands reveals significant atrophy of the thenar wad, as well as some intrinsic muscle atrophy which is represented by palmar 'hollowing' and the MCP hyperextension apparent at rest. [Claimant] is able to tough the base of her little finger with either thumb, but this is accomplished with a sweep across the palm (flexion) vs thumb abduction / true opposition. She describes significant difficulty opening/closing zip loc bags, keyboarding, managing money (coins & bills), and manipulating credit cards.

*Id*.

> In my prior decision, I wrote:
>
> I find that the ALJ's decision to give less than controlling weight to Dr. Thaisetthawatkul's most recent opinion regarding her handling and fingering abilities is not supported by substantial evidence in the record as a whole, especially in light of the new evidence the ALJ did not have the opportunity to consider. On remand, the ALJ should consider all of the medical evidence in the record (including the additional evidence submitted to the Appeals Council regarding [Claimant's] January 2018 visit to the neuromuscular clinic) and reevaluate Dr. Thaisetthawatkul's January 2018 opinion, in addition to [Claimant's] credibility, in light of that evidence.

*Id*. at 1251-52. The ALJ did not comply with these directions. As such, I must again remand this case to the Commissioner for further proceedings and again direct the ALJ

17

to consider all of the medical evidence in the record (including the additional evidence submitted to the Appeals Council regarding Claimant's January 2018 visit to the neuromuscular clinic) and reevaluate Dr. Thaisetthawatkul's January 2018 opinion, in addition to Claimant's credibility, in light of that evidence.

## B. *VE Hypothetical Question*

Because I have found that this case must again be remanded, I find it unnecessary to address Claimant's second argument, which contends that the ALJ's hypothetical question to the VE was not supported by substantial evidence. On remand, the ALJ's reevaluation of the evidence could result in a different RFC and the need to obtain additional VE testimony based on a hypothetical with different limitations.

## VII. CONCLUSION

For the reasons set forth herein:

1. The Commissioner's determination that Claimant was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings consistent with this order.
2. Judgment shall enter in favor of the plaintiff and against the defendant.
3. If Claimant wishes to request an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, an application may be filed up until 30 days after the judgment becomes "not appealable," i.e., 30 days after the 60-day time for appeal has ended. *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

**IT IS SO ORDERED.**

**DATED** this 22nd day of March, 2023.

_____
Leonard T. Strand, Chief Judge